**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:21-cv-82107-DMM

DANIELLE GREENBERG,
individually and on behalf of all
others similarly situated,

       Plaintiff,

v.

HP INC.,

       Defendant.

_____/

**DEFENDANT HP INC.'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

61601963;1

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

III.    LEGAL STANDARDS ..........................................................................................3

     A.      Motion to Dismiss for Lack of Article III Standing Under Rule 12(b)(1)..............3

     B.      Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6). ..................3

IV.     ARGUMENT ..........................................................................................................4

     A.      Plaintiff Lacks Article III Standing to Assert Claims as to Notebook
               Models that She Did Not Purchase. ........................................................................4

     B.      Plaintiff Lacks Article III Standing to Assert Claims on Behalf of
               Purchasers Outside of Florida. ...............................................................................5

     C.      Plaintiff's FDUTPA Claim Fails (Count I). ..........................................................6

           1.      Plaintiff Fails to Allege a Deceptive or Unfair Practice Upon
                    Which a Reasonable Consumer Would Rely. ...............................................7

           2.      Plaintiff Lacks Standing to Assert a Claim for Injunctive Relief. ............10

     D.      Plaintiff's Misleading Advertising Claim Fails (Count II). .................................11

     E.      Plaintiff's Implied Warranty Claim Fails (Count V)............................................12

           1.      Plaintiff Cannot Assert an Implied Warranty Claim Absent Privity
                    of Contract. ................................................................................................13

           2.      Plaintiff Failed to Give Proper Notice of Her Claim. ...............................13

     F.      Plaintiff's Express Warranty Claim Fails as a Matter of Law (Count VI)............15

     G.      Plaintiff's Magnuson-Moss Act Claims Fail as Matter of Law (Counts III-
               IV). .........................................................................................................................17

     H.      Plaintiff's Unjust Enrichment Claim Should Be Dismissed (Count VII). ............18

     I.      Plaintiff's Fraudulent Concealment Claim Fails (Count VIII). ...........................19

V.      CONCLUSION......................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**CASES**

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ............................................................................................11

*Amin v. Mercedes-Benz USA, LLC*,
   301 F. Supp. 3d 1277 (N.D. Ga. 2018) .................................................................................. 15

*Aprigliano v. Am. Honda Motor Co., Inc.*,
   979 F. Supp. 2d 1331 (S.D. Fla. 2013) .................................................................................. 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................................. 3

*Bailey v. Monaco Coach Corp.*,
   168 F. App'x 893 (11th Cir. 2006) ......................................................................................... 13

*Baker v. Brunswick Corp.*,
   2018 WL 1947433 (M.D. Fla. Apr. 25, 2018) ....................................................................... 12

*Barron v. Snyder's-Lance, Inc.*,
   2015 WL 11182066 (S.D. Fla. Mar. 20, 2015) ........................................................................ 4

*Beaver v. Inkmart, LLC*,
   2012 WL 12863137 (S.D. Fla. June 6, 2012) .......................................................................... 7

*Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*,
   2011 WL 4434891 (S.D. Fla. Sept. 23, 2011) ........................................................................11

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) .................................................................................................................. 4

*Boddison v. Gen. Motors LLC*,
   2021 WL 2435388 (M.D. Fla. Mar. 19, 2021) ....................................................................... 18

*Bohlke v. Shearer's Foods, LLC*,
   2015 WL 249418 (S.D. Fla. Jan. 20, 2015) ............................................................................. 5

*Brown v. Electrolux Home Prod., Inc.*,
    817 F.3d 1225 (11th Cir. 2016) ............................................................................................... 6

*Bruce Martin Constr. v. CTB, Inc.*,
   735 F.3d 750 (8th Cir. 2013) ................................................................................................. 15

*Burns v. Winnebago Indus., Inc.*,
   492 F. App'x 44 (11th Cir. 2012) ..................................................................................... 14, 15

*Burns v. Winnebago Indus., Inc.*,
   2013 WL 4437246 (M.D. Fla. Aug. 16, 2013) ....................................................................... 20

*Cardenas v. Toyota Motor Corp.*,
  418 F. Supp. 3d 1090 (S.D. Fla. 2019) ................................................................. 13, 20

*Certain Underwriters at Lloyd's of London v. Black Gold Marine, Inc.*,
  2021 WL 2653819 (S.D. Fla. Feb. 8, 2021) ................................................................. 9

*Cipollone v. Liggett Grp., Inc.*,
  505 U.S. 504, 525 (1992) ......................................................................................... 15

*Dapeer v. Neutrogena Corp.*,
  95 F. Supp. 3d 1366 (S.D. Fla. 2015) ......................................................................... 4

*David v. Am. Suzuki Motor Corp.*,
  629 F. Supp. 2d 1309 (S.D. Fla. 2009) ....................................................................... 15

*Davis v. Fresh Mkt. Inc.*,
  2020 WL 3489369 (S.D. Fla. Jun. 26, 2020) ............................................................. 7, 9

*Day v. Taylor*
  400 F.3d. 1272 (11th Cir. 2005) ................................................................................. 2

*Decerbo v. Melitta USA Inc.*,
  2016 WL 7206244 (M.D. Fla. Oct. 17, 2016) ............................................................. 4

*Deluna v. Am. Journey (PET)*,
  2021 WL 5149790 (S.D. Fla. Nov. 1, 2021) ............................................................... 10

*Diverse Power, Inc. v. City of LaGrange*,
  934 F.3d 1270 (11th Cir. 2019) ................................................................................. 3

*Dixon v. Allergan USA, Inc.*,
  2015 WL 12915671 (S.D. Fla. May 28, 2015) ............................................................. 3

*Donoff v. Delta Air Lines, Inc.*,
  2020 WL 1226975 (S.D. Fla. Mar. 6, 2020) ............................................................... 19

*Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*,
  351 So. 2d 351 (Fla. 4th DCA 1977) ......................................................................... 13

*Eldridge v. Pet Supermarket Inc.*,
  446 F. Supp. 3d 1063 (S.D. Fla. Mar. 10, 2020) ....................................................... 3

*Feldman v. BRP US, Inc.*,
  2018 WL 8300534 (S.D. Fla. Mar. 28, 2018) ............................................................. 5, 6

*Fisher v. Harley-Davidson Motor Grp., LLC*,
  2019 WL 8014364 (S.D. Fla. Oct. 18, 2019) ............................................................. 15

*Garcia v. Kashi Co.*,
  43 F. Supp. 3d 1359 (S.D. Fla. 2014) ......................................................................... 5

*Gen. Matters, Inc. v. Paramount Canning Co.*,
  382 So.2d 1262 (Fla. App. 1980) ............................................................................... 13

61601963;1

*Gordon v. Nat'l Seating & Mobility, Inc.*,
  2021 WL 778741 (N.D. Ga. Mar. 1, 2021) ............................................................ 17

*Harduvel v. Gen. Dynamics Corp.*,
  878 F.2d 1311 (11th Cir. 1989) ............................................................................... 16

*Henson v. Allison Transmission*,
  2007 WL 9709695 (S.D. Fla. June 22, 2007) .......................................................... 13

*Hercules Cap., Inc. v. Gittleman*,
  2018 WL 395489  (S.D. Fla. Jan. 12, 2018) ............................................................ 12

*Holliday v. Albion Lab'ys, Inc.*,
  2015 WL 10857479 (S.D. Fla. June 9, 2015) ............................................................ 5

*Houston v. Marod Supermarkets, Inc.*,
  733 F.3d 1323 (11th Cir. 2013) ............................................................................... 10

*In re Checking Acct. Overdraft Litig.*,
  694 F. Supp. 2d 1302 (S.D. Fla. 2010) ...................................................................... 5

*In re Takata Airbag Prod. Liab. Litig.*,
  193 F. Supp. 3d 1324 (S.D. Fla. 2016) .................................................................... 13

*In re Takata Airbag Prod. Liab. Litig.*,
  396 F. Supp. 3d 1101 (S.D. Fla. 2019) ...................................................................... 4

*In re Takata Airbag Prod. Liab. Litig.*,
  2016 WL 11662171 (S.D. Fla. Sept. 30, 2016) ........................................................ 19

*In re Takata Airbag Prods. Liab. Litig.*,
  2016 WL 1266609 (S.D. Fla. Mar. 11, 2016) ............................................................ 5

*In re Terazosin Hydrochloride Antitrust Litig.*,
  160 F. Supp. 2d 1365 (S.D. Fla. 2001) ...................................................................... 5

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
  2020 WL 7866674 (S.D. Fla. Dec. 31, 2020) ............................................................ 6

*Israel v. Bellsouth Telecomms., Inc.*,
  2012 WL 12862809 (S.D. Fla. July 10, 2012) ......................................................... 12

*J W ex rel. Williams v. Birmingham Bd. of Educ.*,
  904 F.3d 1248 (11th Cir. 2018) ............................................................................... 10

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
  2021 WL 3666312 (S.D. Fla. Aug. 18, 2021) .................................................. *passim*

*Koski v. Carrier Corp.*,
  347 F. Supp. 3d 1185 (S.D. Fla. 2017) ...................................................... 18, 19, 20

*Kramer v. Piper Aircraft Corp.*,
  520 So.2d 37 (Fla. 1988) ......................................................................................... 13

61601963;1

*Kunzelmann v. Wells Fargo Bank, N.A.*,
   2013 WL 139913 (S.D. Fla. Jan. 10, 2013) .............................................................. 19

*Lamb v. Graco Childs. Prod. Inc.*,
   2012 WL 12871963 (N.D. Fla. Jan. 24, 2012)........................................................... 15

*Leon v. Cont'l AG*,
   301 F. Supp. 3d 1203 (S.D. Fla. 2017) ...................................................................... 4

*Lewis v. Casey*,
   518 U.S. 343 (1996)................................................................................................... 6

*Lewis v. Mercedes-Benz USA, LLC*,
   530 F. Supp. 3d 1183 (S.D. Fla. 2021).................................................................. 6, 18

*Llano Funding Grp. v. Cassidy*,
   2015 WL 4698407 (S.D. Fla. Aug. 6, 2015) ...............................................................11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).................................................................................................... 3

*Marrache v. Bacardi U.S.A., Inc.*,
   17 F.4th 1084 (11th Cir. 2021)................................................................................. 19

*Marriot Int'l, Inc. v. Am. Bridge Bahamas, Ltd.*,
   193 So. 3d 902 (Fla. 3d DCA 2015) ........................................................................ 19

*Melton v. Century Arms, Inc.*,
   243 F. Supp. 3d 1290 (S.D. Fla. 2017) .................................................................... 13

*Mesa v. BMW of N. Am., LLC*,
   904 So.2d 450 (Fla. App. 2005)............................................................................... 13

*Mizzaro v. Home Depot, Inc.*,
   544 F.3d 1230 (11th Cir. 2008) ................................................................................. 4

*Padilla v. Porsche Cars N. Am., Inc.*,
   391 F. Supp. 3d 1108 (S.D. Fla. 2019)..................................................................... 13

*PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*,
   2013 WL 12172912 (M.D. Fla. Aug. 28, 2013)......................................................... 7

*Piescik v. CVS Pharmacy, Inc.*,
   2021 WL 5996977 (S.D. Fla. Dec. 15, 2021) .............................................6, 7, 10, 11

*Potje v. Bluegreen Vacation Corp.*,
   2018 WL 5020135 (S.D. Fla. Mar. 6, 2018) ..............................................................11

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ............................................................................ 4, 5

*Richardson v. Palm Harbor Homes, Inc.*,
   254 F.3d 1321 (11th Cir. 2001) ............................................................................... 17

iv

*Royal Typewriter Co. v. Xerographic Supplies Corp.*,
   719 F.2d 1092 (11th Cir. 1983) ....................................................................... 12, 13

*Salcedo v. Hanna*,
   936 F.3d 1162 (11th Cir. 2019) ................................................................................ 3

*Sanchez v. TeamHealth, LLC*,
   2021 WL 4990803 (S.D. Fla. Mar. 31, 2021) .......................................................... 7

*Sanchez-Knutson v. Ford Motor Co.*,
   2015 WL 11197772 (S.D. Fla. July 22, 2015) .......................................................... 4

*Simpson v. FWM Laby's, Inc.*,
   2010 WL 1257714 (S.D. Fla. Mar. 29, 2010) .........................................................11

*Smith v. Forest River, Inc.*,
   2019 WL 8226095 (S.D. Fla. Nov. 25, 2019) ........................................................... 9

*Snyder v. Green Roads of Fla. LLC*,
   430 F. Supp. 3d 1297 (S.D. Fla. 2020) ..................................................................... 4

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016).............................................................................................. 3, 10

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
   524 F.3d 1229 (11th Cir. 2008) ................................................................................ 3

*Tershakovec v. Ford Motor Co.*,
   2018 WL 3405245 (S.D. Fla. July 12, 2018) ..................................................... 13, 14

*Toback v. GNC Holdings, Inc.*,
   2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) ....................................................... 4, 5

*Toca v. Tutco, LLC*,
   430 F. Supp. 3d 1313 (S.D. Fla. 2020) ................................................................... 18

*Trans Petrol Ltd. v. Radulovio*,
   764 So. 2d 878 (Fla. 4th DCA 2000) ...................................................................... 19

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)............................................................................................... 3

*Triton II, LLC v. Randazzo*,
   2018 WL 4932342 (S.D. Fla. Oct. 10, 2018).........................................................11

*Troup v. Toyota Motor Corp.*,
   545 F. App'x 668 (9th Cir. 2013) ............................................................................ 15

*Tull Bros. v. Peerless Prods., Inc.*,
   953 F. Supp. 2d 1245 (S.D. Ala. 2013) ................................................................... 15

*Virgilio v. Ryland Grp.*,
   680 F.3d 1329 (11th Cir. 2012) .............................................................................. 19

v

*Vitt v. Apple Comput., Inc.*,
    469 F. App'x 605 (9th Cir. 2012) ............................................................... 9

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
    287 F. App'x. 81 (11th Cir. 2008) ...................................................... 3, 19

*Wagner v. First Horizon Pharm. Corp.*,
    464 F.3d 1273 (11th Cir. 2006) .............................................................. 7

*Wasser v. Sasoni*,
    652 So. 2d 411 (Fla. 3d DCA 1995) .................................................... 12

*Wilding v. DNC Servs. Corp.*,
    941 F.3d 1116 (11th Cir. 2019) ............................................................11

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.*,
    247 F.3d 1262 (11th Cir. 2001) ........................................................... 10

## STATUTES

15 U.S.C. § 2301 ....................................................................................... 17

15 U.S.C. § 2310 ................................................................................. 17, 18

Fla. Stat. § 501.204 .................................................................................... 6

Fla. Stat. § 672.313 .................................................................................. 17

Fla. Stat. § 672.314 .................................................................................. 12

Fla. Stat. § 672.315 .................................................................................. 12

Fla. Stat. § 672.607 .................................................................................. 13

Fla. Stat. § 817.41 ...................................................................................1, 11

## RULES

Federal Rule of Civil Procedure 8(a) ......................................................... 1

Federal Rule of Civil Procedure 9(b) ................................................. *passim*

Federal Rule of Civil Procedure 12(b)(1) .............................................. 1, 3

Federal Rule of Civil Procedure 12(b)(6) .......................................... *passim*

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. III, §§ 1-2........................................................................ 3

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant HP Inc. ("HP") moves to dismiss Plaintiff Danielle Greenberg's ("Plaintiff") complaint [ECF No. 1] ("Complaint" or "Compl."). In support of its Motion, HP states:

## I.     INTRODUCTION

Plaintiff alleges that she purchased an HP notebook computer, model 17-by2053cl, from a Costco Wholesale store in Lantana, Florida in October 2020. She further alleges that seven months after purchase, the hinges connecting her notebook's display screen to its base malfunctioned. Plaintiff then retained a team of lawyers, who five months later sent HP a letter demanding payment to all purchasers of a range of distinct HP notebooks sold since 2017. The following month, Plaintiff and her counsel filed this action on behalf of a sprawling nationwide class of all purchasers of any one of dozens (by their count) of distinct models of HP notebook computers over the last four years. The Complaint asserts not only claims for breach of warranty, but also claims sounding in fraud under Florida's Deceptive Trade Practices Act (FDUTPA); Misleading Advertising under Florida Statute Section 817.41; fraudulent concealment; and unjust enrichment.

In support of her dubious fraud theories, Plaintiff cites to generic marketing statements made by HP, including that HP notebooks are "high-performance," "reliable and designed for long-lasting performance," "sleek," "compact," and "portable." Even if such statements could support a claim sounding in fraud—and they cannot—the Complaint is completely devoid of any allegation that Plaintiff ever reviewed a single HP statement, whether identified in the Complaint or not. Further, even if Plaintiff did review statements made by HP, the Complaint lacks any particulars as to whether, when, where, or how she reviewed them, and how they purportedly misled her. Instead, Plaintiff quotes extensively from posts made by unidentified third parties culled by her counsel from internet chatrooms, video platforms, and even archived webpages— none of which contain the detail required to state viable claims sounding in fraud, or any other theory. Plaintiff's Complaint also includes twenty separate images of what she claims are HP notebooks, which she contends support her claims in this case. *See* Compl. ¶¶ 3-4, 15, 19-20, 22-25, 30-31, 33, 36-39. Tellingly, none of the images are of Plaintiff's own notebook.

Plaintiff's individual claims fail because she has not stated any claim for relief relating to her HP 17-by2053cl. Simply put, Federal Rules of Civil Procedure 8(a) and 9(b) demand much more to state a claim than the few facts that Plaintiff has alleged here. Because she cannot salvage her claims by amendment, they should be dismissed with prejudice. Nor can Plaintiff, consistent

with Article III's standing requirements, assert claims as to notebook models that she never purchased, arising under laws of states other than Florida, or for injunctive relief, and the Court should also dismiss such claims with prejudice.

## II.   BACKGROUND

Even though Plaintiff's Complaint runs to 59 pages, she alleges few facts in support of her own individual claims. Plaintiff alleges that she purchased an HP 17-by2053cl notebook computer for $599.99 from a Costco Wholesale store in Lantana, Florida on October 27, 2020. Compl. ¶ 97. She alleges no specific statements by HP that she read or on which she relied in purchasing her notebook. Instead, Plaintiff vaguely alleges that at some point before she bought her notebook, she conducted online research, "including reviewing HP's representations about the device on HP's website and third-party reviews." *Id.* ¶ 14.

Plaintiff alleges that her notebook was covered by HP's one-year limited warranty (*id.* ¶ 98)[1] and the notebook "experienced" an alleged defect "[w]ithin approximately seven months" from the date of purchase. *Id.* ¶ 99. But Plaintiff does not claim she sought warranty service from HP at any time, or that HP refused to honor its limited warranty. Instead, Plaintiff states that at some unspecified time, she "went online for support and was directed to the HP support forums" and saw "numerous posts" regarding other models of HP notebook models. *Id.* ¶ 100.

Plaintiff then apparently retained one or more law firms to send a litigation demand letter dated October 13, 2021. *Id.* ¶ 101. The Complaint characterizes the letter as a "statutory demand for correction of the defect," *id.*, but no such request was made. Instead, Plaintiff's counsel's letter threatens to institute a nationwide class action pursuant to myriad state statutes, if HP did not "return all monies paid by putative class members." **Ex. B**, Statutory Demand at p. 4 § IV.[2]

One month later, Plaintiff filed her Complaint asserting eight causes of action, demanding money damages, restitution, and injunctive relief, for herself and on behalf of a class of all purchasers of any one of seven distinct HP notebook models sold in the United States since 2017. Compl. ¶¶ 1, 102, Prayer for Relief.

---

[1] *See also* Compl. ¶ 50, n.12 (citing "HP Worldwide Limited Warranty and Technical Support, https://www.hp.com/us-en/privacy/limited_warranty.html#2"). HP attaches as **Exhibit A** to this Motion a copy of the HP Limited Warranty available at the hyperlink and requests that the Court take judicial notice of it. *See Day v. Taylor*, 400 F.3d. 1272, 1276 (11th Cir. 2005).

[2] Plaintiff failed to provide the Court a copy of the "statutory demand," but HP submits it as **Exhibit B** to this Motion and requests that the Court take judicial notice of it. *Id.*

### III.   LEGAL STANDARDS

#### A.   Motion to Dismiss for Lack of Article III Standing Under Rule 12(b)(1).

"Article III vests the judicial power in the federal courts and extends that power to 'Cases' and 'Controversies.'" *Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019) (citing U.S. Const. art. III, §§ 1-2). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

To demonstrate standing, Plaintiff must show she personally has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (citations omitted).

Where, as here, defendant presents a facial challenge under Federal Rule 12(b)(1), the Court reviews whether "the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Eldridge v. Pet Supermkt. Inc.*, 446 F. Supp. 3d 1063, 1067 (S.D. Fla. Mar. 10, 2020) (quoting *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008)).

#### B.   Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6).

Under Rule 12(b)(6), a complaint must be dismissed unless it states sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court need not accept legal conclusions couched as factual allegations. *Diverse Power, Inc. v. City of LaGrange*, 934 F.3d 1270, 1273 (11th Cir. 2019). Thus, complaints that fail to sufficiently allege facts and instead rest on or merely parrot the statutory elements of a claim, supported by conclusory statements, are properly dismissed under Rule 12(b)(6).

When a complaint alleges "fraud or mistake, a party must state with particularity the circumstances constituting [the] fraud or mistake." Fed. R. Civ. P. 9(b). "The Rule's particularity requirement is not satisfied by 'conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud.'" *Dixon v. Allergan USA, Inc.*, 2015 WL 12915671, at *3 (S.D. Fla. May 28, 2015) (quoting *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x. 81, 86 (11th Cir. 2008)). This requires

3

the complaint to state "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id.* at *4 (quoting *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)). In other words, the plaintiff must "plead the who, what, when, where, and how" of the alleged fraud. *Mizzaro*, 544 F.3d at 1230.

## IV.   <u>ARGUMENT</u>

### A.   Plaintiff Lacks Article III Standing to Assert Claims as to Notebook Models that She Did Not Purchase.

Article III requires that Plaintiff "allege and show that [she] personally ha[s] been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Blum v. Yaretsky*, 457 U.S. 991, 1001 & n.13 (1982) (citation omitted). "[I]t is well-settled that prior to the certification of a class . . . the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). This requires that "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Id.* at 1280 (citation and internal quotation marks omitted).

"Following *Prado-Steiman*, courts repeatedly dismiss claims under the rule that a named plaintiff in a consumer class action 'cannot raise claims relating to those other products which he did not purchase.'" *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1125 (S.D. Fla. 2019) (quoting *Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013)); *see also Snyder v. Green Rds. of Fla. LLC*, 430 F. Supp. 3d 1297, 1303 (S.D. Fla. 2020) (dismissing claims relating to unpurchased products); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1221 (S.D. Fla. 2017) (same); *Decerbo v. Melitta USA Inc.*, 2016 WL 7206244, at *3 (M.D. Fla. Oct. 17, 2016) (same); *Sanchez-Knutson v. Ford Motor Co.*, 2015 WL 11197772, at *4 (S.D. Fla. July 22, 2015) (same).[3]

---

[3]   *See also Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) ("Plaintiff lacks Article III standing to bring claims on behalf of the [] products he did not purchase [.]"); *Barron v. Snyder's-Lance, Inc.*, 2015 WL 11182066, at *17 (S.D. Fla. Mar. 20, 2015) ("[A] named plaintiff in a consumer class action 'cannot raise claims relating to those other products

This Court has done the same.  *See Holliday v. Albion Lab'ys, Inc.*, 2015 WL 10857479 (S.D. Fla. June 9, 2015) (Middlebrooks, J.).  In *Holliday*, this Court held that it "agrees with courts in this District's application of *Prado–Steiman* in similar cases and concludes that a plaintiff cannot establish Article III standing to bring claims for products he did not purchase."  *Id.* at *5 (citing *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1394 (S.D. Fla. 2014); *Toback*, 2013 WL 5206103, at *5; and *Prado–Steiman*, 221 F.3d at 1279-80).

Plaintiff seeks to represent purchasers of any one of more than dozens of models of notebooks manufactured across seven distinct product lines, with one such line alone including "at least 37" different models released since 2014.  Compl. ¶ 47.  By her own admission, the notebooks sold across these distinct product lines include models that are materially different, including in terms of functionality and price, when compared either one-to-another or to Plaintiff's model 17-by2053cl.  *See, e.g.*, *id.* ¶¶ 47-48 (identifying models with 360-degree hinges, unlike Plaintiff's model, and prices ranging from $329.99 to $1,499.99); *id.* ¶ 80 (identifying model "marketed as a 2-in-1 laptop with a touchscreen monitor").  As it did in *Holliday*, this Court should dismiss all claims asserted in the Complaint to the extent those claims relate to models of HP notebook that Plaintiff herself did not purchase.

**B.      Plaintiff Lacks Article III Standing to Assert Claims on Behalf of Purchasers Outside of Florida.**

Applying *Prado-Steiman*, courts in this circuit "have, time and again, [] prohibited [plaintiffs] from asserting claims under a state law other than that which the plaintiff's own claim arises."  *Feldman v. BRP US, Inc.*, 2018 WL 8300534, at *6 (S.D. Fla. Mar. 28, 2018) (citing *In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 1266609, at *4 (S.D. Fla. Mar. 11, 2016) ("A named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise."); *In re Checking Acct. Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010) (dismissing, for lack of Article III standing, "all state statutory claims where no named plaintiff resides in the state from which the claim is asserted"); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) ("[T]he named plaintiffs cannot rely on unidentified persons within those states to state a claim for relief.  Class allegations that others suffered injuries giving rise to claims add . . . nothing

which he did not purchase[.]") (citation omitted); *Bohlke v. Shearer's Foods, LLC*, 2015 WL 249418, at *4 (S.D. Fla. Jan. 20, 2015) ("[I]n the Eleventh Circuit, a named plaintiff in a consumer class action cannot raise claims relating to products which she herself did not purchase.").

to the question of standing.")); *see also In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2020 WL 7866674, at *17 (S.D. Fla. Dec. 31, 2020) ("[A] named plaintiff lacks standing to assert claims on behalf of putative class members whose claims arise under other states' laws.").

These principles were recently applied in a similar context in *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183 (S.D. Fla. 2021).  There, Judge Ruiz reviewed prior decisions from this District, including *Feldman*.  "In *Feldman*, the named plaintiff was a Florida resident who personally asserted claims under the M[agnuson-Moss Act], FDUTPA, and Florida common law, but he lacked standing to assert claims on behalf of a nationwide class because he '[did] not claim a legal injury in any state other than Florida, nor d[id] he allege an injury that arises under the laws of any other state.'"  *Id.* at 1205 (quoting *Feldman*, 2018 WL 8300534, at *6 (alterations in original), and citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).  The court in *Lewis* likewise dismissed nationwide class claims brought by four plaintiffs under the Magnuson-Moss Act and their nationwide unjust enrichment claim, which in effect were "fifty unjust enrichment claims— one for each state."  *Id.* ("Such a claim would thus need to be brought on behalf of fifty state subclasses.  Plaintiffs here, however, do not have standing to assert an unjust enrichment claim under any state's law but their own because they did not suffer any injuries in fact traceable to alleged violations of laws in other states.").

Plaintiff's Florida statutory and common law claims arise under Florida law, which also governs her federal Magnuson-Moss Act claims.  *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1231 (11th Cir. 2016) ("[C]laims under the Magnuson-Moss Act are identical to the other warranty claims because they are also based on state law." (citation omitted)).  As in *Feldman*, "[sh]e therefore lacks standing to assert claims on behalf of class members who purchased Class [products] outside of Florida."  2018 WL 8300534, at *7.  This Court should thus dismiss Plaintiff's putative nationwide class claims with prejudice, and limit this action to claims arising under Florida law.

### C.    Plaintiff's FDUTPA Claim Fails (Count I).

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ."  *Piescik v. CVS Pharmacy, Inc.*, --- F. Supp. 3d ---, 2021 WL 5996977, at *6 (S.D. Fla. Dec. 15, 2021) (Middlebrooks, J.) (citing Fla. Stat. § 501.204(1)).  Under FDUTPA, a claim for damages has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."  *Id.*

An "unfair practice" is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL 3666312, at *11 (S.D. Fla. Aug. 18, 2021). A "deceptive act" occurs when there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Id.*; *accord Piescik,* 2021 WL 5996977, at *4. No FDUTPA claim lies unless the plaintiff establishes that the alleged unfair practice or deceptive act was likely to deceive a consumer acting reasonably in the same circumstances. *See Piescik*, 2021 WL 5996977, at *4; *Davis v. Fresh Mkt. Inc.*, 2020 WL 3489369, at *2 (S.D. Fla. Jun. 26, 2020).

Because Plaintiff's FDUTPA claim sounds in fraud (*see* Compl. ¶¶ 31, 175, 177-87), Rule 9(b)'s heightened pleading standards apply. *Jackson*, 2021 WL 3666312, at *12 (citing *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*, 2013 WL 12172912, at *6 (M.D. Fla. Aug. 28, 2013)); *Sanchez v. TeamHealth, LLC*, 2021 WL 4990803, at *10 (S.D. Fla. Mar. 31, 2021) ("FDUTPA claims based on deceptive or unfair practices involving fraud . . . must be pled with particularity.").[4]

Under Rule 9(b), a FDUTPA count based upon fraud must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Jackson,* 2021 WL 3666312, at *12 (citation and internal quotation marks omitted).

Plaintiff fails to satisfy these pleading standards, as further discussed below.

### 1. Plaintiff Fails to Allege a Deceptive or Unfair Practice Upon Which a Reasonable Consumer Would Rely.

Plaintiff's FDUTPA claim fails to credibly allege—much less with the requisite specificity—any deceptive act or practice by HP that meets the objective test for a FDUTPA claim. Plaintiff alleges that the following constitutes deceptive or unfair trade practices:

---

[4]  Some courts have held that fraud claims under FDUTPA are not subject to Rule 9(b). But the Eleventh Circuit has instructed that Rule 9(b) standards apply wherever non-fraud claims are based on purported fraudulent conduct. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006). This Court has applied Rule 9(b) to dismiss a FDUTPA claim where, as here, the plaintiffs failed "to identify a precise misstatement—let alone the time, date, or place where the misstatement was made." *Beaver v. Inkmart, LLC,* 2012 WL 12863137, at *2 (S.D. Fla. June 6, 2012) (Middlebrooks, J.).

**(1)** that HP marketed its notebooks as "precision-crafted, high-performance notebooks" (Compl. ¶ 79 (citing the "Timeline of our History" page on HP's website));[5]

**(2)** that HP's Envy 360 and Pavilion 360 notebooks (neither of which Plaintiff purchased) are "convertible" (*id.* ¶ 7);

**(3)** that the 360-degree Convertible PC (which Plaintiff did not purchase) was marketed as a 2-in-1 notebook (*id.* ¶ 80);

**(4)** that the 360-degree models (which Plaintiff did not purchase) offered "an affordable touch convertible PC that transforms the computing experience with a 360-degree hinge" (*id.* ¶ 81);

**(5)** that HP's notebooks are "reliable" and "designed for long-lasting performance" with "compact, portable design" (*id.* ¶ 82 (citing a June 4, 2018 YouTube video));

**(6)** that HP "emphasized the mobility" of its notebooks by describing them as follows:

- "easy to take anywhere";
- "built to keep you productive and entertained from anywhere";
- "a compact laptop that makes it easy to get work done on the go with a Precision Touchpad, while the long battery life and HP Fast Charge let you keep moving";
- "packs more performance into a smaller profile, so you can get more done wherever you go . . . . so you can do more and enjoy entertainment wherever you go"; and
- "create on-the-go, anytime, anywhere and whenever inspiration strikes"

(*id.* ¶ 83 (providing a series of hyperlinks to HP's website, none of which contain any representations concerning hinges));

**(7)** that HP's products have undergone "extensive quality testing" (*id.* ¶ 84 (providing a hyperlink to a webpage advertising a sale on notebooks with no reference to testing));

**(8)** that HP invited technology reporters to its testing facility years before Plaintiff's 2020 purchase (*id.* ¶ 85 (citing a "Wayback Machine" archived version of a July 10, 2014

---

[5]   The link Plaintiff provides does not lead to the "precision-crafted, high-performance notebook" language, and the undersigned was unable to find such representation made with respect to the notebook model Plaintiff purchased.  HP did use that language in a September 15, 2009 press release regarding the "Envy" line of notebooks—a premium line that is different from and significantly more expensive than the model that Plaintiff purchased.

61601963;1

posting on a website called "ChipChick," which documents the testing done at HP's testing facility, including that HP tests its notebook hinges 27,000 times);

**(9)** other representations by HP concerning the testing of its notebooks, none of which Plaintiff contends are inaccurate or temporally or substantively relevant to her purchase (*id.* ¶¶ 87-91); and

**(10)** HP "marketed, promoted, and warranted" that its notebooks "were premium computers, able to perform the tasks of opening and closing, withstand transportation, and furthermore able to perform all of the basic functions of similar laptops of their class" (*id.* ¶ 92 (providing no citation or source of such alleged representations, and presumably referring to the statements listed above)).

None of these allegations sufficiently alleges deceptive or unfair trade practices under Florida law. Plaintiff simply regurgitates a series of positive marketing statements HP has made on its website regarding its notebooks generally—and despite never claiming to have seen a single one of those statements—contends that because the hinges of her computer failed sooner than she expected, HP's positive statements regarding its notebooks are deceptive and unfair. Such allegations cannot support a deceptive and unfair trade practices claim under FDUTPA. *See, e.g.*, *Jackson*, 2021 WL 3666312, at *12-13 (holding that broad, generalized allegations regarding "misleading advertisements" allegedly made on defendant's website do not meet Rule 9(b)'s pleading requirements); *Certain Underwriters at Lloyd's of London v. Black Gold Marine, Inc.*, 2021 WL 2653819, at *3 (S.D. Fla. Feb. 8, 2021) (dismissing FDUTPA claims based on general allegations that defendant "engaged in unfair practices by manufacturing the Vessel which proved to be unsuitable for the purposes it was advertised"); *Fresh Mkt., Inc.*, 2020 WL 3489369, at *4 (finding that defendant's promotional materials, which did not contain language or imagery explicitly addressing the deceptive intent plaintiff alleged, were not actionable under FDUTPA); *Smith v. Forest River, Inc.*, 2019 WL 8226095, at *6-7 (S.D. Fla. Nov. 25, 2019) (holding that an "idealized portrayal of a quality product" contained on a defendant's website is not the kind of representation for which FDUTPA provides redress and is mere marketing "puffery," stating that "to the extent the [product] was built shoddily, the Plaintiff must avail himself of another theory of relief . . . to obtain redress"); *see also Vitt v. Apple Comput., Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012) (generalized statements regarding laptop's durability are non-actionable puffery).

9

Plaintiff has not alleged anything even approaching a deceptive or unfair act, and certainly not with the particularity required by Rule 9(b). Nor could she plausibly do so. Plaintiff has already presented the facts on which her individual claim is based—none of which assert any actionable representation or omission. Having scoured the Internet, Plaintiff is clearly unable to allege any such representation by HP regarding the notebook model she purchased, much less an actionable representation on which she relied. The Court should dismiss the FDUTPA claim with prejudice.

### 2. Plaintiff Lacks Standing to Assert a Claim for Injunctive Relief.

Even if Plaintiff had properly alleged a FDUTPA claim entitling her to her actual damages, her request for an injunction under FDUTPA must still be dismissed for lack of Article III standing. "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows 'a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury.'" *Deluna v. Am. Journey (PET),* 2021 WL 5149790, at *3 (S.D. Fla. Nov. 1, 2021) (quoting *Houston v. Marod Supermkts., Inc.,* 733 F.3d 1323, 1329 (11th Cir. 2013)). In addition, Plaintiff must show a real and immediate threat of future injury to her *personally*; she cannot rely on bare allegations regarding the hypothetical injury to "members of the putative class." *J W ex rel. Williams v. Birmingham Bd. of Educ.,* 904 F.3d 1248, 1272 (11th Cir. 2018) (citing *Spokeo*, 578 U.S. at 338 n.6).

Courts, including this Court, have dismissed claims for injunctive relief where the named plaintiff in a putative class action "has not alleged any future harm to *himself*." *See, e.g., Piescik*, 2021 WL 5996977, at *3 (emphasis in original). Plaintiff here also makes no such allegation, and instead alleges that "it is likely that many of the Class Laptops will be used or purchased by unsuspecting members of the putative class[.]" Compl. ¶ 121; *see also id.* ¶ 95 (asserting that injunctive relief might benefit putative class members).

Because Plaintiff does not allege any facts that plausibly demonstrate a likelihood that she will be injured by the conduct challenged in the Complaint and that such alleged injury is "real and immediate," her request for injunctive relief fails for want of Article III standing. *Jackson*, 2021 WL 3666312, at *9 (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)). This Court should therefore dismiss Plaintiff's FDUTPA claim for injunctive relief, as well as her broader "requests for injunctive relief" (Compl. ¶¶ 36, 95, 121 & Prayer for Relief ¶¶ J, N). *See Piescik*, 2021 WL 5996977, at *3 (dismissing, for lack of Article

III standing, a plaintiff's "broad [requests] for injunctive relief 'to [e]njoin Defendants conduct' and have Defendant 'engage in a corrective advertising and labeling/disclosure campaign'").

### D.      Plaintiff's Misleading Advertising Claim Fails (Count II).

Florida Statute Section 817.41 prohibits "misleading advertising." *Piescik*, 2021 WL 5996977, at *6 (citing Fla. Stat. § 817.41(1)).  To state a claim under the statute, "[P]laintiff [must] prove reliance on the alleged misleading advertising, as well as each of the other elements of the common law tort of fraud in the inducement" and "that the misleading advertisement was made to the general public of Florida, or to some portion of the general public of the state." *Potje v. Bluegreen Vacation Corp.*, 2018 WL 5020135, at *4 (S.D. Fla. Mar. 6, 2018) (Middlebrooks, J.).

In addition, claims for false or misleading advertising under the statute must comport with Rule 9(b).  *See Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, 2011 WL 4434891, at *4 (S.D. Fla. Sept. 23, 2011); *Simpson v. FWM Laby's, Inc.*, 2010 WL 1257714, at *4 (S.D. Fla. Mar. 29, 2010).  Therefore, Plaintiff must allege with specificity "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff[ ]; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1291 (11th Cir. 2010) (citation omitted).  "[B]are allegation[s] of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b)." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019).  That is all Plaintiff's Complaint includes here.

Plaintiff does not specify what statements were made in which documents or oral representations, the time and place of such representations, the person responsible for making them, the content of such statements and the manner in which they misled her, and what HP obtained as a consequence of the fraud, thus requiring dismissal.  *See Triton II, LLC v. Randazzo*, 2018 WL 4932342, at *4-5 (S.D. Fla. Oct. 10, 2018) (dismissing claim where plaintiff failed "to adequately set forth each precise statement [defendant] allegedly made, the time and place each statement was made by [defendant], the manner in which each statement misled [plaintiff], the reason or reasons why each statement is misleading, and what [defendant] obtained as a result"); *Llano Funding Grp. v. Cassidy*, 2015 WL 4698407, at *5 (S.D. Fla. Aug. 6, 2015) ("Plaintiff does not allege what statements in the [] report were misrepresented, when they were made, and how the misrepresentations induced *Plaintiff* into acting on them." (emphasis in original)).

11

Even if Plaintiff could allege reliance, the generic statements Plaintiff attributes to HP (regarding reliability, compact design, functionality, mobility) are mere puffery, reliance upon which is unreasonable. *See Baker v. Brunswick Corp.*, 2018 WL 1947433, at *7 (M.D. Fla. Apr. 25, 2018) (holding in a false advertising claim under Fla. Stat. 817.41 involving an allegedly defective boat that marketing statements to the effect that the boat was "designed to provide effortless docking and ultimate confidence when cruising even the roughest ocean waves" was non-actionable puffery) (citing *Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995)); *see also Hercules Cap., Inc. v. Gittleman*, 2018 WL 395489, at *21 (S.D. Fla. Jan. 12, 2018) (Middlebrooks, J.) ("An action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning a past or existing fact. "'Puffing' statements, such as a promise to deliver an 'exceptional' product or service, are matters of opinion rather than fact, and constitute non-actionable puffery." (citations omitted)).

Plaintiff's misleading advertising claim relies entirely on non-actionable "puffing" statements—on which Plaintiff did not rely. For both of these reasons, her misleading advertising claim should be dismissed with prejudice.

### E.     Plaintiff's Implied Warranty Claim Fails (Count V).

Plaintiff's Complaint is unclear regarding the scope, if any, of the implied warranty she alleges was breached. *See* Compl., Count V, ¶¶ 152-58. Count V could be dismissed for that reason alone, as it fails to give HP "fair notice of the claim and its grounds." *Israel v. Bellsouth Telecomms., Inc.*, 2012 WL 12862809, at *2 (S.D. Fla. July 10, 2012) (citation omitted). However, HP liberally construes Plaintiff's allegations that the notebook was "not in merchantable condition and [] not fit for the ordinary purpose" (Compl. ¶ 154), as her attempt to assert a claim for breach of implied warranty of merchantability under Florida's Uniform Commercial Code—Sales (UCC) Section 672.314 (Fla. Stat. § 672.314), rather than a claim under the UCC's implied warranty of fitness for a particular purpose as codified in Section 672.315.[6]

---

[6] The implied warranty of fitness for a particular purpose arises only when "a seller has reason to know a *particular purpose* for which the goods are required and the buyer relies on the seller's skill or judgment to select or furnish suitable goods." *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, *Id.* (11th Cir. 1983) (emphasis added) (citing Fla. Stat. § 672.315). A "particular purpose" "envisages a specific use by the buyer which is peculiar to the nature of his business." *Id.* at 1100. Plaintiff does not allege these elements. Indeed, her Complaint is itself unclear as to whether Plaintiff sought to use her notebook "for personal use," or "for her business and personal computing needs." Compl. ¶ 97. To the extent Count V might be construed to assert

The claim fails regardless, for two reasons:  lack of privity; and lack of pre-suit notice.

**1.   Plaintiff Cannot Assert an Implied Warranty Claim Absent Privity of Contract.**

Under Florida law, only purchasers in privity with a product manufacturer may assert a breach of implied warranty claim against the product manufacturer.  *See Henson v. Allison Transmission*, 2007 WL 9709695, at *2 (S.D. Fla. June 22, 2007) (Middlebrooks, J.) ("The Florida Supreme Court, in *Kramer [v. Piper Aircraft Corp.*, 520 So.2d 37 (Fla. 1988)], and the Eleventh Circuit Court of Appeals, in *Bailey [v. Monaco Coach Corp.*, 168 F. App'x 893 (11th Cir. 2006)], have both acknowledged the need for privity in a breach of implied warranties claim.").

Plaintiff purchased her notebook not from HP, but from "a Costco Wholesale store," Compl. ¶ 97, and her claim for breach of implied warranty thus fails as a matter of law.  *See Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1109 (S.D. Fla. 2019) ("Time and again, Florida courts have dismissed breach of implied warranty claims under Florida law for lack of contractual privity where the plaintiff purchaser did not purchase a product directly from the defendant." (citing *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1115-16 (S.D. Fla. 2019); *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1346 (S.D. Fla. 2016); *Tershakovec v. Ford Motor Co.*, 2018 WL 3405245, at *10 (S.D. Fla. July 12, 2018); *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1303-04 (S.D. Fla. 2017))); *see also Bailey*, 168 F. App'x at 894 n.1 ("[P]rivity of contract is an essential element of a claim for breach of implied warranty." (citing *Mesa v. BMW of N. Am., LLC*, 904 So.2d 450, 458 (Fla. App. 2005))).

**2.   Plaintiff Failed to Give Proper Notice of Her Claim.**

Buyers in Florida must give notice of an alleged breach within a reasonable time after discovery.  *Royal Typewriter Co.*, 719 F.2d at 1102 ("As a condition precedent to recovery for breach of warranty, a buyer must notify the seller of the breach within a reasonable time after he discovers or should have discovered any breach[.]" (citing Fla. Stat. § 672.607)).  "The buyer bears the burden of showing that he gave the required notice within a reasonable time." *Id.* (citing *Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So.2d 1262, 1264 (Fla. App. 1980)).  Notice is required for both implied and express warranty claims.  *See Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977).

---

a claim for breach of the implied warranty of fitness for a particular purpose, it should be dismissed for failure to state a claim under Rule 12(b)(6).

Manufacturers may also require buyers such as Plaintiff to provide notice pursuant to the terms of an express warranty. *See Burns v. Winnebago Indus., Inc.*, 492 F. App'x 44, 49 (11th Cir. 2012). ("we agree with the district court that Plaintiffs' Florida–UCC claims fail because Plaintiffs did not notify [defendant] of the defects, as required by the terms of the warranty"). The rule protects basic notions of private contracting: If a plaintiff fails to provide notice, defendant "never ha[s] a chance to remedy [the alleged] defects itself, an opportunity that it had contracted for." *Id.* at 48. Here, the HP Limited Warranty requires notice to HP[7] and provides buyers directions about how to obtain warranty service. *See* **Ex. A**, HP Limited Warranty at 8 ("Contacting HP . . . .").

Even though Plaintiff was required to provide notice to HP by statute and the terms of the Limited Warranty, she failed to do so. Plaintiff alleges that she purchased her notebook on October 27, 2020, and that "[w]ithin approximately seven months"—or by no later than May 2021— Plaintiff "experienced the Defect." Compl. ¶¶ 98-99. Plaintiff also avers that at some unspecified time she "went online for support," but she did not actually seek any replacement or repair from HP or otherwise contact HP. *See id.* ¶ 100. Rather, she "sent a statutory demand for correction of the defect on October 13, 2021." *Id.* ¶ 101.

On its face, the October 13, 2021 demand letter sent by Plaintiff's counsel was hardly an attempt to obtain warranty benefits for Plaintiff, or to provide HP an opportunity to remedy any issue in accordance with the terms of the limited warranty. Indeed, her counsel's letter does not speak at all to Plaintiff's purchase or experience—not even the model of her notebook is included in the letter. *See generally* **Ex. B**, Statutory Demand. Instead, the letter threatens class litigation, "demand[ing] that HP correct or otherwise rectify the damage caused by such unfair trade practices and warranty breaches, and return all monies paid by putative class members." *Id.* at p. 4 § IV ("Please note that Plaintiff intends to assert Class allegations under the foregoing statutes if full payment to the Class does not occur within the applicable statutory period.").

This is not pre-suit notice as contemplated by either the Florida UCC or the terms of the HP Limited Warranty. *See, e.g., Tershakovec*, 2018 WL 3405245, at *7 ("[The] point of the notice

---

[7]   *See* **Ex. A**, HP Limited Warranty at 1 ("To the extent permitted by local law, HP guarantees that it will repair, replace, or refund, at HP's option, an HP Hardware Product that manifests a defect in materials or workmanship during the Limited Warranty Period, if you, the end-user customer, provides HP with notice of a defect in your HP Hardware Product during the Limited Warranty Period."); *id.* at 2 (requiring receipt of notice "from you, the end-user customer, of the manifestation of such a defect during the Limited Warranty Period").

14

requirement is to allow the warrantor an opportunity to cure the problem rather than defend a lawsuit." (quoting *Lamb v. Graco Childs. Prod. Inc.,* 2012 WL 12871963, at *2 (N.D. Fla. Jan. 24, 2012)); *Burns,* 492 F. App'x at 48 (explaining that where notice is required under the terms of a warranty, "a primary purpose of requiring that Plaintiffs notify [defendant] is so that [defendant] would have a chance to remedy the defects itself," and that failure to give such notice improperly vitiates the terms of the contract). Plaintiff's implied warranty claim should thus be dismissed for this reason as well.

 **F.** **Plaintiff's Express Warranty Claim Fails as a Matter of Law (Count VI).**

 "A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.,* 505 U.S. 504, 525 (1992). In other words, "a written warranty is treated as a contract between buyer and seller," *David v. Am. Suzuki Motor Corp.,* 629 F. Supp. 2d 1309, 1318 (S.D. Fla. 2009) (citation omitted), and, as a result, if an alleged defect is outside the scope of coverage, a plaintiff's claim for breach of express warranty fails as a matter of law. *See, e.g., Fisher v. Harley-Davidson Motor Grp., LLC,* 2019 WL 8014364, at *5 (S.D. Fla. Oct. 18, 2019) (dismissing breach of warranty claim under Florida law where plaintiff "did not allege that [defendant] failed to repair a covered defect that manifested during the warranty period"). Plaintiff's express warranty claim fails in three respects.

 *First*, the alleged design defect is excluded from the HP Limited Warranty applicable to Plaintiff's claims, which expressly limits coverage to "a defect in materials or workmanship during the Limited Warranty Period." Compl. ¶ 50 (citing HP Limited Warranty). It is hornbook law that "express warranties covering defects in materials and workmanship exclude defects in design." *Troup v. Toyota Motor Corp.,* 545 F. App'x 668, 668 (9th Cir. 2013); *Amin v. Mercedes-Benz USA, LLC,* 301 F. Supp. 3d 1277, 1285-87 (N.D. Ga. 2018) (holding that vehicle warranty limiting coverage to "defects in materials or workmanship" "does not cover design defects"); *Tull Bros. v. Peerless Prods., Inc.,* 953 F. Supp. 2d 1245, 1257 (S.D. Ala. 2013) ("A written warranty against defects in materials or workmanship does not encompass a warranty against defects in design."); *see also Bruce Martin Constr. v. CTB, Inc.,* 735 F.3d 750, 754 (8th Cir. 2013) ("[A] design defect cannot also be a defect in material and workmanship.").

 Plaintiff alleges the existence of a design defect that she believes "compromises the computers' ability to open or close, be transported, or configured into any of its advertised dynamic positions." Compl. ¶ 52. Plaintiff purports to pinpoint the design defect as HP's use of certain

component parts in the hinge assemblies of the notebooks.  *Id.* ¶ 53; *see also id.* ¶ 96 ("As the Defect ***likely results from the design*** of the Class Laptops—i.e., the use of flimsy plastic material to mount the laptop hinges—replacing the broken hinges with identical ones is unlikely to fully remedy the Defect." (emphasis added)).  Because Plaintiff alleges the existence of a design defect[8] excluded by the HP Limited Warranty, her warranty claim fails as a matter of law and should be dismissed with prejudice.

**Second**, Plaintiff's claim fails because she did not provide the requisite notice of the alleged defect within a reasonable time after she purportedly discovered it, as required under Florida law and the terms of the HP Limited Warranty.  Because the law relating to notice applies to both implied and express warranty claims, HP incorporates by reference its discussion and arguments set forth in Section IV.E.2 above, and requests that Plaintiff's express warranty claim be dismissed on the same grounds.

**Third**, Plaintiff's Complaint is rife with allegations about statements made in internet videos and chatrooms.  *See, e.g.*, Compl. ¶¶ 55-67; *id.* ¶¶ 69-92.  She similarly refers to certain "marketing materials and warranties" made by HP (e.g., *id.* ¶¶ 18, 59) and otherwise claims that HP "warranted" that her notebook was a "premium computer" (*id.* ¶ 92) and "high quality" (*id.* ¶ 160).  Even so, she appears to acknowledge that her express warranty claim is *not* based on any such unspecified statements—none of which she alleges she reviewed prior to purchase—but instead on the terms of the HP Limited Warranty.  *See, e.g.*, Compl. ¶ 98 ("Plaintiff's purchase was covered by the Limited Warranty for a period of one year."); *id.* ¶ 160.  To the extent Plaintiff purports to bring claims based on her references to "marketing materials and warranties" (or indeed any statements beyond those made in the HP Limited Warranty), her claim should be dismissed

---

[8] The scope of the alleged defect underscores its nature.  Plaintiff contends that the alleged defect exists not only across seven different lines of HP products (Compl. ¶ 1), but also across multiple different notebook models within those lines manufactured since 2009 (*id.* ¶¶ 46-47).  These are allegations of an alleged design defect not covered by the HP Limited Warranty—not those of a defect in "materials or workmanship."  *See, e.g.*, *Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1317 (11th Cir. 1989) (explaining that the "distinction between 'aberrational' defects and defects occurring throughout an entire line of products is frequently used in tort law to separate defects of manufacture from those of design" (citation omitted)).

under the terms of the warranty[9] and because Plaintiff has failed to plead statements of fact made by HP relating to *her* purchase of the HP 17-by2053cl. *See* Fla. Stat. § 672.313(1)(a).

    **G.**    **Plaintiff's Magnuson-Moss Act Claims Fail as Matter of Law (Counts III-IV).**

    Plaintiff's Magnuson-Moss Act claims fail because Plaintiff has not stated a claim for breach of express or implied warranty under Florida law. *See, e.g.*, *Jackson*, 2021 WL 3666312, at *19 & n.8 (explaining that a claim under the Magnuson-Moss Act can only be asserted where viable state law warranty claims exist) (collecting cases).[10]

    This Court also lacks subject matter jurisdiction over Plaintiff's Magnuson-Moss Act class claims, as the statute prohibits plaintiffs from bringing in district court any class action where "the number of named plaintiffs is less than one hundred." *Jackson*, 2021 WL 3666312, at *19 (quoting 15 U.S.C. § 2310(d)(3)(C)).[11]  "[T]here is a split of authority on how the [Magnuson-Moss Act]'s

---

[9]  *See* **Ex. A**, HP Limited Warranty at 1 ("**HP MAKES NO OTHER EXPRESS WARRANTY OR CONDITION WHETHER WRITTEN OR ORAL AND, TO THE EXTENT PERMITTED BY LAW, HP EXPRESSLY DISCLAIMS ALL WARRANTIES AND CONDITIONS NOT STATED IN THIS HP LIMITED WARRANTY.**") (emphasis and typography in original).  Except for any separate written agreements between a purchaser and HP or an HP-authorized reseller, the terms and conditions of the HP Limited Warranty "**SUPERSEDE ANY PRIOR AGREEMENTS, ADVERTISEMENTS, OR OTHER REPRESENTATIONS—INCLUDING REPRESENTATIONS MADE IN HP SALES LITERATURE OR ADVICE GIVEN TO YOU BY HP, AN AGENT OR EMPLOYEE OF HP, OR ANY NON-HP AGENT OR EMPLOYEE—THAT MAY HAVE BEEN MADE IN CONNECTION WITH YOUR PURCHASE OR LEASE OF THE HP HARDWARE PRODUCT[.]**" *Id.* (emphasis and typography in original).

[10]  Plaintiff's express warranty claim under Magnusson-Moss (Count III) extends only to "'written warranties' within the meaning of 15 U.S.C. § 2301(6)." Compl. ¶ 138.  Oral statements are not included.  *See* 15 U.S.C. § 2301(6); *see also Richardson v. Palm Harbor Homes, Inc.*, 254 F.3d 1321, 1325 (11th Cir. 2001) ("The Act's consumer-suit provision, for instance, supplies a federal remedy for breach of written and implied warranties, but not for oral express warranties, which remain the domain of state law." (citations omitted)).  Thus, even if Plaintiff could base a warranty claim on the extra-contractual statements, the federal claim would fail if it was based on any of the videos identified in the Complaint. *See also Gordon v. Nat'l Seating & Mobility, Inc.*, 2021 WL 778741, at *3 (N.D. Ga. Mar. 1, 2021) ("[T]he oral statements are obviously not in writing, and there is no allegation that the video contains text. Therefore, neither the video nor the oral statements can be considered 'written' promises [under the Act.]").

[11]  15 U.S.C. Section 2310(d)(1) permits suits: "(A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection."  Paragraph 3, in turn, states that "[n]o claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection . . . (c) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." *Id.* § 2310(d)(3)(c).

jurisdictional and numerosity requirements affect the Class Action Fairness Act ('CAFA'), 28 U.S.C. § 1332(d), which the Eleventh Circuit has not yet addressed." *Id.* (citations omitted). However, courts in this circuit have held that "class action plaintiffs asserting claims under the [Magnuson-Moss Act] must satisfy the additional jurisdictional requirements set forth in [15 U.S.C. § 2310(d)(3)(C)]." *Id.*; *see also Lewis*, 530 F. Supp. 3d at 1207 (dismissing Magnuson-Moss claim for lack of subject matter jurisdiction because Plaintiff failed to satisfy the 100-plaintiff requirement of 15 U.S.C. § 2310(d)(3)(C)); *Boddison v. Gen. Motors LLC*, 2021 WL 2435388, at *9 (M.D. Fla. Mar. 19, 2021) ("No class action may be reasserted under the M[agnusson-Moss Act] without 100 named plaintiffs."). To the extent this Court finds Plaintiff has stated claims under state law, HP requests that the Court dismiss Plaintiff's Magnuson-Moss Act claims for lack of subject matter jurisdiction.

**H.** **Plaintiff's Unjust Enrichment Claim Should Be Dismissed (Count VII).**

Plaintiff's claim for "unjust enrichment/restitution" fails for several reasons. ***First***, "a plaintiff cannot maintain a claim for unjust enrichment if there is an express warranty governing the plaintiff's rights." *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1195 (S.D. Fla. 2017). And that Plaintiff's express warranty claims "fail as a matter of law and must be dismissed is of no consequence." *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1327 (S.D. Fla. 2020).

***Second***, a plaintiff may not proceed on an unjust enrichment theory where she has adequate remedies at law, including for example by operation of a FDUTPA claim. *See Lewis*, 530 F. Supp. at 1235 (dismissing plaintiffs' unjust enrichment claim that was "based on precisely the same conduct as their FDUPTA claim").

***Third***, because Rule 9(b) applies to unjust enrichment claims sounding in fraud, the allegations must be made with particularity. *See Jackson*, 2021 WL 3666312, at *7, *20. Plaintiff has failed to allege the misrepresentations and omissions that form the basis for her unjust enrichment claim with sufficient particularity (*see* Compl. ¶¶ 169-176), and her unjust enrichment claim fails for this reason as well. *Id.* at *20.

***Finally***, a claim for unjust enrichment/restitution requires a direct benefit to be conferred on the defendant, and Plaintiff has made no allegation that HP obtained any such direct benefit from her whatsoever. Plaintiff alleges that "HP received a benefit from Plaintiff and other members of the [putative] Class in the form of payment for products purchased on HP's website." Compl. ¶ 171. Plaintiff, however, purchased from Costco, and not from HP's website. *Id.* ¶ 97.

18

Where a plaintiff alleges that she purchased from a *retailer*, the law is clear that she cannot state a claim against the *producer*. *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1102 (11th Cir. 2021) (affirming dismissal of unjust enrichment claim asserted against producers because plaintiff purchased from a retailer and thus, at most, alleged that he had conferred an indirect benefit to the producer); *accord Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913, at *5 (S.D. Fla. Jan. 10, 2013) (Middlebrooks, J.) (observing that under Florida law a claim for unjust enrichment requires that the plaintiff make a "direct payment" to the defendant (citing *Virgilio v. Ryland Grp.*, 680 F.3d 1329 (11th Cir. 2012))).

## I.     Plaintiff's Fraudulent Concealment Claim Fails (Count VIII).

A claim for fraudulent concealment requires the plaintiff to state facts demonstrating that "(1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known that the material fact should be disclosed; (3) the defendant knew its concealment of the fact would induce the plaintiff to act; (4) the defendant had a duty to disclose the material fact; and (5) the plaintiff relied on the misrepresentation to his or her detriment." *Koski*, 347 F. Supp. 3d at 1196 (citing *Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013)). Plaintiff also must satisfy Rule 9(b)'s heightened pleading standards, which require her to "identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud." *Id.* (citing *W. Coast Roofing*, 287 F. App'x at 86). Here, the Complaint is devoid of such factual allegations, as detailed in Section IV.C.1 above, and her claim should therefore be dismissed.

Plaintiff's claim also fails because Plaintiff has not alleged facts supporting any duty to disclose, which, as this Court has held, may "arise[] when one party has information the other party has a right to know because of a fiduciary or other relation of trust or confidence." *Donoff v. Delta Air Lines, Inc.*, 2020 WL 1226975, at *9 (S.D. Fla. Mar. 6, 2020) (Middlebrooks, J.) (explaining that defendant had no duty to disclose to consumer the compensation it received from insurance company where, as here, the plaintiff "was simply an arms-length purchaser" (citing *Trans Petrol Ltd. v. Radulovio*, 764 So. 2d 878, 879-80 (Fla. 4th DCA 2000))).[12]

---

[12]   A duty to disclose may also arise in circumstances constituting half-truths; "[s]uch a claim, however must be supported by some evidence of a statement that would trigger the further duty to disclose all known material facts." *In re Takata Airbag Prod. Liab. Litig.*, 2016 WL 11662171, at *6 (S.D. Fla. Sept. 30, 2016) (quoting *Marriot Int'l, Inc. v. Am. Bridge Bah., Ltd.*,

Finally, Plaintiff's fraudulent concealment claim is barred by Florida's economic loss rule, which precludes claims for fraudulent concealment absent a showing of personal injury or damage to property other than the allegedly defective product itself. Where, as here, a plaintiff seeks economic loss damages pursuant to a fraudulent concealment claim, and those damages are precisely the same as those sought by a claim for breach of warranty, the economic loss rule bars the claim. *See Cardenas*, 418 F. Supp. 3d at 1104; *Koski*, 347 F. Supp. 3d at 1198 ("To hold otherwise would allow the economic loss rule to be manipulated such that any time a purchaser received a defective product that did not cause any injuries or damage to other property, such a purchaser could assert claims for negligent and fraudulent concealment regarding the defect to avoid the economic loss rule." (quoting *Burns v. Winnebago Indus., Inc.*, 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013))).

## V.   <u>CONCLUSION</u>

For all of the foregoing reasons, HP respectfully requests that the Court grant its Motion and dismiss Plaintiff's Complaint with prejudice.

Date:  January 6, 2022

Respectfully submitted,

By: *<u>/s/ Dianne O. Fischer</u>*

| | |
|---|---|
| Michael J. Stortz | Dianne O. Fischer |
| (*pro hac vice* application forthcoming) | Florida Bar No. 994560 |
| mstortz@akingump.com | deedee.fischer@akerman.com |
| Marshall L. Baker | Sandra J. Millor |
| (*pro hac vice* application forthcoming) | Florida Bar No. 13742 |
| mbaker@akingump.com | sandra.millor@akerman.com |

**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street, Suite 1500
San Francisco, CA  94194
Telephone: (415) 765-9500
Facsimile: (415) 765-9501

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL  33131
Telephone: (305) 374-5600
Facsimile: (305) 349-4654

---

193 So. 3d 902, 908 (Fla. 3d DCA 2015)).  Plaintiff Greenberg, however, has identified no statements made by HP such that she could assert a duty to disclose here.